**Original filed 3/27/07**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD K. BRIDGEFORTH, ) | No. C 05-4326 JF (PR) |
| ) | |
| Petitioner, ) | ORDER DENYING |
| vs. ) | RESPONDENT'S MOTION TO DISMISS; FURTHER |
| ) | SCHEDULING ORDER |
| A.P. KANE, et al., ) | |
| ) | |
| Respondents. ) | |
| _____ ) | (Docket No. 4) |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the decision of the California Board of Prison Terms ("Board") denying him parole. The Court ordered Respondent to show cause why the petition should not be granted. Respondent filed a motion to dismiss the petition. Petitioner has filed opposition, and Respondent has filed a reply. After reviewing the papers submitted, the Court will DENY Respondent's motion to dismiss (docket no. 4) and issue a further scheduling order as set forth below.

**BACKGROUND**

In 1989, Petitioner was sentenced to a state prison term of seven years-to-life after his conviction for kidnap for robbery in Kern Superior Court. Petitioner challenges the

1  Board's decision to deny him parole following a suitability hearing in December 2003.
2  Petitioner filed habeas petitions in the state superior court, state appellate court and state
3  supreme court, all of which were denied as of September 7, 2005.  Petitioner filed the
4  instant federal habeas petition on October 25, 2005.

5       Petitioner alleges that the Board's denial of parole based on the unchanging
6  circumstances of his commitment offense was not supported by sufficient evidence and
7  violated the terms of his plea agreement, thereby depriving him of his reciprocal benefit
8  of lessened punishment and his state and federal due process rights under the Fifth and
9  Fourteenth Amendments.

## DISCUSSION

11       Respondent moves to dismiss the instant petition on the grounds that Petitioner's
12  claim is untimely, this Court lacks subject matter jurisdiction, and Petitioner in fact
13  received due process.  The Court will discuss each of Respondent's arguments in turn.

14  A.    <u>Statute of Limitations under AEDPA</u>

15       Respondent first contends that the instant petition is untimely pursuant to 28
16  U.S.C. § 2244(d)(1)(D).  The Antiterrorism and Effective Death Penalty Act of 1996
17  ("AEDPA") became law on April 24, 1996 and imposed for the first time a statute of
18  limitations on petitions for a writ of habeas corpus filed by state prisoners.  Under
19  AEDPA, prisoners challenging non-capital state convictions or sentences must file
20  petitions for relief within one year of the latest of the date on which: (A) the judgment
21  became final after the conclusion of direct review or the time passed for seeking direct
22  review; (B) an impediment to filing an application created by unconstitutional state action
23  was removed, if such action prevented petitioner from filing; (C) the constitutional right
24  asserted was recognized by the Supreme Court, if the right was newly recognized by the
25  Supreme Court and made retroactive to cases on collateral review; or (D) the factual
26  predicate of the claim could have been discovered through the exercise of due diligence.
27  28 U.S.C. § 2244(d)(1).
28  \\\

Section 2244's one-year limitation period applies to all habeas petitions filed by persons in "custody pursuant to the judgment of a State court," even if the petition challenges a pertinent administrative decision rather than a state court judgment. Shelby v. Bartlett, 391 F.3d 1061, 1063 (9th Cir. 2004) (quoting 28 U.S.C. § 2244(d)(1)). For prisoners challenging administrative decisions such as the revocation of good time credits or the denial of parole, § 2244(d)(1)(D) applies, and the one-year limitations period begins to run on the date the administrative decision becomes final. See id. at 1066 (limitation period began to run the day after petitioner received timely notice of the denial of his administrative appeal challenging disciplinary decision); Redd v. McGrath, 343 F.3d 1077, 1079 (9th Cir. 2003) (limitations period began to run when Board of Prison Terms denied prisoner's administrative appeal challenging the Board's decision that he was unsuitable for parole). The "factual predicate" of the habeas claim is the administrative appeal board's denial of the administrative appeal rather than the denial of the state habeas petition. See id. at 1082. A prisoner challenging an administrative decision is, however, entitled to statutory tolling for the period when state habeas petitions are pending. see id. at 1084. Section 2244(d)(1)(A) does not govern the timeliness of challenges to administrative decisions because the word "judgment" in § 2244(d)(1)(A) refers to the judgment of conviction and sentence and the phrase "direct review" refers to direct appellate review of that judgment. See id. at 1081.

Here, Respondent maintains that Petitioner's claim concerning a violation of his plea agreement is untimely. Petitioner alleges that his plea agreement provides that he will serve no more than twelve years in prison. Petition at 11. Respondent alleges that the "factual predicate" of Petitioner's claim that his plea agreement was violated thus arose in November 2001, when Petitioner was incarcerated beyond the twelve year period. Petitioner did not raise this claim until November 4, 2004, in his habeas petition to the state superior court. Petition, Exh. D.

Petitioner contends that his claim concerning his plea agreement is timely under 2244(d)(1)(D), because he had to serve a determinate term of four years prior to the

commencement of the indeterminate term which he challenges here. Assuming that Petitioner is correct, the twelve years began to run in November 1991. Petitioner also claims that although the parole hearing at issue here was held on December 18, 2003, he filed an administrative appeal challenging this decision on March 28, 2004, which was not decided until several months later. See Pet.'s Opp. at 1-2.

The Court concludes that the instant petition is timely under 2244(d)(1)(D). Although Petitioner challenges the Board's denial of parole following his December 18, 2003 suitability hearing, the statute of limitations began to run only when Petitioner's administrative appeal challenging the Board's decision became final. See Redd v. McGrath, 343 F.3d at 1084. As noted above, Petitioner filed his first state habeas petition in November 2004, prior to the date of the administrative appeal decision.

B.  Subject Matter Jurisdiction

Next, Respondent alleges that the Court does not have subject matter jurisdiction over the petition because California inmates have no federally protected due process right to parole release. Respondent contends that the holding of In re Dannenberg, 34 Cal. 4th 1061 (2005), establishes that California prisoners have no liberty interest in parole.

Although a convicted person has no inherent or constitutional right to early release on parole, a State's statutory parole scheme may create "a presumption that parole release will be granted" if it uses mandatory language. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 12 (1979). A presumption of parole release gives rise to a constitutionally protected liberty interest that cannot be denied without adequate due process protection. Id. at 11-16; see also Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987).

In Allen, the United States Supreme Court held that Montana's statutory parole scheme, which instructed that the parole board "shall" release a prisoner on parole absent certain conditions, used mandatory language that created a constitutionally protected right to parole that would be granted if those conditions were found not to exist. Allen, 482 U.S. at 376-78. Similarly, in Greenholtz, the Supreme Court held that Nebraska's parole

statute, which instructed that the parole board "shall" release the prisoner on parole absent certain conditions, created a liberty interest in release on parole if those conditions were found not to exist. Greenholtz, 442 U.S. at 11-12.

California's parole scheme is set forth in California Penal Code § 3041. Section 3041(b) states that the parole board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Pen. Code § 3041(b).

The Ninth Circuit has held that the California parole scheme "gives rise to a cognizable liberty interest in release on parole" under the Allen and Greenholtz standards because it "'creates a presumption that parole release will be granted' unless the statutorily defined determinations [set forth in § 3041(b)] are made." McQuillion v. Duncan, 306 F.3d 895, 903 (9th Cir. 2002) (quoting Greenholtz, 442 U.S. at 12). Thus, under Ninth Circuit authority, the mandatory language of California's parole scheme creates a federally protected liberty interest such that an inmate has a right to due process in parole release absent the determinations set forth in § 3041(b).

Although Respondent argues that In re Dannenberg, 34 Cal. 4th 1061 (2005), establishes that California life term inmates have no federally protected liberty interest in parole, the Ninth Circuit recently rejected this reading of Dannenberg. It held squarely that "California inmates continue to have a liberty interest in parole after In re Dannenberg." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1125 (9th Cir. 2006). The Court observed that Dannenberg "addressed the narrow question whether the Board must engage in a comparative proportionality analysis in setting parole dates pursuant to section 3041(a) before determining whether an inmate is suitable for parole pursuant to section 3041(b)." Id. at 1127-28. It did not "explicitly or implicitly hold that there is no constitutionally protected liberty interest in parole." Id. at 1128. In fact, Dannenberg used language that indicated it assumed the existence of a liberty interest:

1 "the Board has always enjoyed broad parole discretion with deferential judicial oversight.
2 But these well-established principles do not deny due process.  On the contrary, they
3 define and limit the expectancy in parole from a life sentence to which due process
4 interests attach."  Dannenberg, 34 Cal. 4th at 1095 n.16; see also id. at 1094 ("sole
5 reliance on the commitment offense might . . . contravene the inmate's constitutionally
6 protected expectation of parole.")

7 Respondent also relies upon language in Sandin v. Connor, 515 U.S. 472 (1995).
8 Sandin held that state-created liberty interests protected by the Due Process Clause are
9 "generally limited to freedom from restraint" which "imposes atypical and significant
10 hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 483-84.
11 Respondent argues that because Petitioner can expect to be imprisoned for life, denial of
12 parole is not an "atypical" or "significant hardship," so § 3041 does not give rise to a
13 state-created liberty interest.  This argument has been rejected by the Ninth Circuit in
14 both McQuillion v. Duncan, 306 F.3d 895, 903 (9th Cir. 2002) and Biggs v. Terhune, 334
15 F.3d 910, 914 (9th Cir. 2003), both of which are controlling here.[1]  Because Petitioner
16 thus has a federally protected liberty interest in release on parole, this Court has subject
17 matter jurisdiction pursuant to 28 U.S.C. § 2254 over the instant petition.  Accordingly,
18 Respondent's motion to dismiss (docket no. 4) is DENIED.[2]

19 In light of the denial of the motion to dismiss, Respondent shall serve an answer to
20 the Order to Show Cause **within sixty days** of the date of this order.  Respondent shall
21 file with the answer and serve on Petitioner a copy of all portions of the state parole
22 record that have been transcribed previously and that are relevant to a determination of

---

[1] In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court criticized the mandatory language methodology described above and offered a new test; however, the Sandin test relates to claims dealing with the day-to-day management of prisons and does not apply to parole eligibility determinations.  See McQuillion, 306 F.3d at 902-03.

[2] The Court declines to address Respondent's additional argument to dismiss Petitioner's claims on the merits.  Respondent may address the merits of Petitioner's claims and renew its arguments in its answer, as set forth below in the Court's further scheduling order.

1  the issues presented by the petition.  If Petitioner wishes to respond to the answer, he shall
2  do so by filing a traverse with the Court and serving it on Respondent **within thirty days**
3  of his receipt of the answer.
4      It is Petitioner's responsibility to prosecute this case.  Petitioner is reminded that
5  all communications with the Court must be served on Respondent by mailing a true copy
6  of the document to Respondent's counsel.  Petitioner must keep the Court and all parties
7  informed of any change of address by filing a separate paper captioned "Notice of Change
8  of Address."  He must comply with the Court's orders in a timely fashion.  Failure to do
9  so may result in the dismissal of this action for failure to prosecute pursuant to Federal
10 Rule of Civil Procedure 41(b).
11     IT IS SO ORDERED.
12 DATED:  3/26/07
13                                                   JEREMY FOGEL
                                                  United States District Judge

1  A copy of this order was mailed to the following:

2

3  Richard K. Bridgeforth
   D-19012
4  CTF
   P.O. Box 689
5  Soledad, CA  93960-0689

6

7  Jessica N. Blonien
   CA State Attorney General's Office
8  455 Golden Gate Avenue
   Suite 11000
9  San Francisco, CA  94102-7004

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28