NOT FOR CITATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| RICHARD K. BRIDGEFORTH, | ) | No. C 05-4326 JF (PR) |
| | ) | |
| Petitioner, | ) | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | ) | |
| | ) | |
| A.P. KANE, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, a California state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a decision by the California Board of Prison Terms ("Board") that he is unsuitable for parole. The Court directed Respondent to show cause why the cognizable claim should not be granted. Respondent filed a motion to dismiss, which the Court denied. Respondent then filed an answer addressing the merits of the petition, and Petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claim presented and will deny the petition.

///

///

///

# BACKGROUND

The charges against Petitioner arose from his kidnapping and robbery of two taxi drivers. Petitioner, who currently is in custody at Soledad State Prison, pleaded guilty in 1989 to two counts of kidnapping to commit robbery (Cal. Pen. Code § 209(b)). Ans., Ex. 1 (Abstract of Judgment) at 1. The Kern Superior Court sentenced Petitioner to two concurrent terms of life with the possibility of parole, plus two years.[1]  Id. at 2.

The facts of the two commitment offenses are as follows. In early April 1989, Petitioner took a taxi to a destination. Ans., Ex. 4 (Probation Officer's Report) at 6. After arrival, Petitioner held a knife against the driver's throat and demanded his money: "I don't want to hurt you, just give me your money." Id. The driver gave Petitioner his money and then complied with Petitioner's demand that he lie down in the back seat of the taxi. Id. Petitioner drove the taxi a few blocks, stopped, and then ordered the driver to step into the trunk. Id. at 7. After securing the driver in the trunk, Petitioner drove for a while, stopped, and told the driver that he would telephone someone to release him (the driver) from the trunk. Id. Petitioner apparently left the scene. No one had come to release the driver, who, after ninety minutes in the trunk, finally was able to release himself and telephone his dispatcher.[2]  Id.

Later that same month, Petitioner repeated the crime with another taxi driver, this time saying, "Do as I say or I'll cut your throat." Id. at 8. The driver pushed the knife away from his throat, sustaining a cut on his hand. Id. Petitioner kept the knife at the driver's throat and ordered him to drive. Id. Petitioner placed his left hand of the wheel while keeping the knife

---

1. The record gives conflicting versions of Petitioner's sentence. Petitioner asserts that the sentence was two terms of seven years to life. Pet. at 2. The Kern Superior Court Abstract of Judgment states that the sentence was two concurrent life terms plus two additional years because of sentencing enhancements, with the possibility of parole. Ans., Ex. 1 at 2. The Life Prisoner Evaluation Report prepared for Petitioner's 2003 parole suitability hearing states that the sentence was "[l]ife plus 4 years." Pet., Ex. B at 1. The Kern Superior Court's order denying Petitioner's state habeas petition states that "Petitioner was sentenced to life with the possibility of parole." Pet., Ex. D at 1.

2. Petitioner contends that he did call the taxi driver's dispatcher to tell him the driver's location. Pet., Ex. A at 9.

against the driver's throat and demanded to be driven to various locations. Id.  Petitioner eventually took over driving of the vehicle, stopped, and then ordered the driver to step into the trunk and demanded the driver's money. Id. at 8-9.  The driver handed his money to Petitioner, who then locked the driver in the trunk. Id. at 9.

In December 2003, the Board found Petitioner unsuitable for parole because he would pose an unreasonable risk of danger to society if released, citing as its reasons that "[t]he offense was carried out in an especially cruel manner" which "demonstrates a disregard for human suffering," and that Petitioner had "an escalating pattern of criminal conduct and violence."[3] Pet., Ex. A (Transcript of Dec. 3, 2003 parole hearing) at 35, 36.  In response, Petitioner filed state habeas petitions, all later denied, in the California superior, appellate, and supreme courts.[4] Pet. at 4.    Petitioner filed the instant federal habeas petition in 2005.

In seeking federal habeas relief, Petitioner alleges that the Board's denial of parole based on the unchanging circumstances of his commitment offense was based upon insufficient evidence and violated the terms of his plea agreement depriving him of his reciprocal benefit of lessened punishment and his state and federal due process rights under the Fifth and Fourteenth Amendments.  Order to Show Cause ("OSC") at 2; Pet. at 13, 16, 21.

## DISCUSSION

**A.     Standard of Review**

This Court will entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law,

---

3. This was the fourth time the Board found Petitioner unsuitable for parole. Pet. at 8.

4. The Kern Superior Court issued a reasoned decision.  The other state courts issued summary denials.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Bridgeforth326.hcruling.md

as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.     Petitioner's Claim**

The Board complies with due process provided that there is "some evidence" to support its decision. A parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) (same). Additionally, the evidence underlying the Board's decision must have some indicia of reliability. McQuillion, 306 F.3d at 904. Accordingly, if the Board's determination of parole suitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904.

In assessing whether there is "some evidence" to support the Board's denial of parole in this case, this Court must consider the regulations that guide the Board in making its parole suitability determinations. The Board is to consider "all relevant, reliable information available." 15 Cal. Code Regs. § 2402(b). Section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." The regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. 15 Cal. Code Regs. § 2402(c)-(d).[5]

---

5. The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

Applying these principles to the instant case, the Court concludes that Petitioner's claim is without merit. The record shows that there was some evidence to support the Board's parole decision, based not only on the circumstances of the commitment offense, but also on other relevant considerations. After a full hearing, the Board concluded that Petitioner was not suitable for parole and "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." Pet., Ex. A at 34. As its reasons for this decision, the Board found that "[t]he offense was carried out in an especially cruel and callous manner. The offense was carried out in a manner which demonstrates a disregard for human suffering." Id. The Board cited specifics of the commitment offense – threatening the taxi drivers with a knife, intentionally locking them in the vehicles' trunks – that led it to its decision.

In addition to the nature and circumstances of the commitment offense, the Board considered other parole suitability factors, such as Petitioner's criminal history, his unstable social history, and his behavior in prison. The Board noted that Petitioner had a lengthy criminal record, which includes burglary, theft, parole violations, being a fugitive from justice, assault and battery, and possession and being under the influence of a controlled substance. Pet., Ex. B (Life Prisoner Evaluation Report, November 2003 Calendar) at 4.

The Board also cited Petitioner's unstable social history, which includes the crimes listed above, and his heavy use, starting at age seventeen, of alcohol and drugs, including cocaine and heroin, drugs under the influence of which Petitioner admits being at the time of the commitment offense. Pet., Ex. A at 35. Although the Board noted and commended Petitioner's highly positive progress in prison, it also found that he had committed disciplinary infractions. Id. On a final note, the Board stated that "[Petitioner] needs to participate in self-help in order to face, discuss, understand, and cope with stress in a nondestructive manner." Id. Because some evidence exists to support the Board's finding of parole unsuitability, the Board's decision has complied with the requirements of due process.

Petitioner also contends that the Board's continued reliance on the circumstances of the commitment offense has resulted in a deprivation of his right to due process. Pet. at 18. Ninth

1  Circuit precedent holds that a continued reliance solely on the circumstances of the commitment
2  offense eventually may result in a violation of due process.  The court has reasoned that "[t]he
3  Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the
4  factors considered . . . A continued reliance in the future on an unchanging factor, the
5  circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative
6  goals espoused by the prison system and could result in a due process violation." Biggs v.
7  Terhune, 334 F.3d 910, 916-17 (9th Cir. 2003).  In a recent decision, the Ninth Circuit
8  emphasized the continuing vitality of Biggs.  See Irons v. Carey, 479 F.3d 658 (9th Cir. 2006).
9  The court stressed its hope that "the Board will come to recognize that in some cases, indefinite
10 detention based solely on an inmate's commitment offense, regardless of the extent of his
11 rehabilitation, will at some point violate due process, given the liberty interest in parole that
12 flows from relevant California statutes." Id. at 664 (citing Biggs, 334 F.3d at 917).  However,
13 the Ninth Circuit has not set a standard as to when a complete reliance on unchanging
14 circumstances would amount to a due process violation.

15         As discussed above, this Court finds that the record contains at least some evidence to
16 support the Board's finding, consonant with due process and the Ninth Circuit's holding in
17 Biggs, that Petitioner was unsuitable for parole.  While the circumstances of the commitment
18 offense are long past, in the context of the record as a whole they support the Board's decision.
19 As noted, the Board did not rely solely on the circumstances of the commitment offense, but also
20 considered Petitioner's criminal and social history and his behavior while in prison.[6]

21         Petitioner next contends that the Board's decision violates the terms of his plea
22 agreement.[7]  Pet. at 21-22.  Having served "19+ credit years solely for kidnap/robbery (7 years

---

6. Petitioner asserts that the Board denies parole in "approximately 97±%" of cases, "demonstrating a bias against parole." Pet. at 11. However, the Board's actions in other cases is irrelevant. The Board's duty is to conduct an individualized determination based on the specific facts of each individual case, which it has done here.

7. Petitioner claims that because the government has not provided him with the "reciprocal benefit" of release on parole, he "entered into his plea agreement under false premises," and, therefore, the agreement is invalid. Pet. at 23. This claim is without merit. Under general

1  beyond his suggested maximum [m]atrix term of 12 years)," Petitioner argues that he should
2  receive the benefit of his contract with the government, that is, a grant of parole. Id. at 24.

3     This claim also is without merit. Petitioner was sentenced to two concurrent life
4  sentences with the possibility of parole. Under the terms of that sentence, parole is a possibility,
5  provided that Petitioner meets the requirements for a finding of parole suitability. As discussed
6  above, the Court finds that the Board's decision that Petitioner did not meet the requirements for
7  a finding of parole suitability is supported by some evidence. Accordingly, there is no violation
8  of the plea agreement.

9     Finally, Petitioner contends that the Board's decision does not comport with the sentence
10 lengths recommended by California's Sentencing Matrix. Pet. at 11. This claim is without
11 merit. The Board is under no duty to apply the matrix once it has determined that a prisoner is
12 unsuitable for parole. In re Dannenberg, 34 Cal. 4th 1069, 1071 (2005). "The Legislature has
13 not disturbed the Board's long-standing formal policy that a determination of individual
14 suitability must precede the setting of a "uniform" parole release date."[8] Id. "The BPT acts
15 properly in determining unsuitability, and the inmate receives all constitutional process due, if
16 the Board provides the requisite procedural rights, applies relevant standards, and renders a
17 decision supported by "some evidence." Id. Federal courts have held repeatedly that the Board's
18 use of this "some evidence" standard sufficiently protects an inmate's due process rights.
19 Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006).
20 ///
21 ///

---

principles of contract law, a party's failure to meet the terms of the agreement may constitute a violation of the agreement, but does not render the agreement invalid.

8. "[W]e conclude that the Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually. While the Board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." In re Dannenberg, 34 Cal. 4th at 1071.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Bridgeforth326.hcruling.md

**CONCLUSION**

Applying the highly deferential standard imposed by AEDPA, this Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (1), (2). Accordingly, the Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings and parole hearing. The petition for writ of habeas corpus is DENIED. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: 4/18/08

JEREMY FOGEL
United States District Judge

Order Denying Petitioner for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Bridgeforth326.hcruling.md